Craig Allen DEAN, Plaintiff,

v.

Guy EARLE, Richard Novak, and John Ward, Defendants.

Civ. A. No. C–93–0273–P(H).

United States District Court,
W.D. Kentucky,
at Paducah.

Oct. 28, 1994.

Craig Allen Dean, pro se.

Richard C. Roberts, Whitlow, Roberts, Houston & Russell, Paducah, KY, for defendants.

**337**

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendants have renewed their motion for summary judgment on the claims of Plaintiff, Craig Allen Dean, under 42 U.S.C. § 1983 for false imprisonment and malicious prosecution.[1] Unquestionably, Plaintiff was unfairly imprisoned and prosecuted. Upon close inspection, the Court finds reason to believe that his Fourth Amendment protections were trampled upon as well. For the reasons set forth herein, Defendants' motion is denied, with the exception that the claims against Defendant John Ward are dismissed. Plaintiff is entitled to his day in court on his remaining claims against Defendants Earle and Novak.

### I.

On June 20, 1992 at 00:17 hours, Sgt. Richard Novak and Patrolman Patterson of the Fulton Police Department responded to a call from the police dispatcher concerning a break-in and attempted rape of M.R. at her home. According to Sgt. Novak, he arrived at 00:22 hours at the residence and talked to M.R., her brother, and her mother, Barbara Rodehaver. The family described the perpetrator as a naked black male, about five feet nine inches tall, with very short hair. He had fled when the family dog started barking at him. Barbara Rodehaver had seen the perpetrator as he ran from her daughter's room and out through the back door of the house.

Novak and Patterson then began to search the area around the house. Patterson radioed Novak, telling him that some neighbors who lived on Third Street, behind the Rodehaver house, had seen a black male, holding a blue bag, walking on Third. Novak and Patterson then located Plaintiff Craig Dean, who was walking approximately 100 feet from the Rodehaver residence. Defendants claim that they found Dean at 00:31 hours. Plaintiff asserts that the officers approached him at 00:22 hours, just five minutes after receiving the call.

Dean was wearing a shirt, trousers, and boots that take him about two minutes to lace and tie. The bag Dean was carrying contained some tape and shaving equipment. Novak asserts that the bag had enough empty space to have contained the clothes Dean was wearing. Novak also noticed that the garage door, approximately 50 feet from the house, was open and reasoned that Dean could have dressed in the garage in five minutes.

Novak arrested Dean and placed him in the back seat of the police car. Barbara Rodehaver walked to the car, and looked in through the window, but could not make a positive identification. According to her grand jury affidavit, she noticed only that Dean had short hair like the assailant. It was on this basis that Plaintiff was ordered incarcerated. Novak's affidavit suggests a more positive identification. He claims that Barbara Rodehaver had stood on the front porch and told him that Dean was the person who she had seen in her house.

Dean told the authorities that he had been at a party a few blocks away from the Rodehaver house. He left the party on foot because his friend who had driven him to the party wanted to stay. Dean named many people who had knowledge of his whereabouts on that evening and who could presumably vouch for his innocence. The police did not investigate the validity of Dean's alibi. Sgt. Novak claims that Plaintiff provided no such information. On June 28, 1992, Novak received a call from a reserve patrolman concerning a call from Rochelle Pirtle, Dean's girlfriend. She stated that Oscar Bishop had committed the crime and that the victim knew Bishop. Novak interviewed M.R., who stated that she did not know Bishop. No further investigation of Ms. Pirtle's allegations was pursued.

The police took Dean's footprints, fingerprints, and hair and blood samples, none of which produced any evidence linking Dean to the crimes charged. The Kentucky State Police crime laboratory completed the shoe print comparison on July 9, 1992, the finger-

---

1. By previous Memorandum and Order the Court dismissed Plaintiff's false arrest claim as barred by the statute of limitations, dismissed the City of Fulton because it did not condone any unconstitutional policy, and dismissed the prosecutors because their absolute immunity barred any claims for actions within the scope of their duty.

print examination on August 13, and the hair comparisons and serological analyses on August 21. All the tests proved negative. Additional fingerprints lifted from the scene were sent to the laboratory on September 7. No results from this last test appear on the record.

Nevertheless, the Fulton Circuit Court grand jury indicted Plaintiff on the charges of burglary, attempted rape, and assault on August 21, 1992. Police Chief Guy Earle assigned Officer John Ward, who was not an arresting officer, to testify before the grand jury. The department has a policy of sending only one officer to testify before the grand jury about general cases to save manpower. Ward had not been involved with Dean's case other than to package and label some of the evidence to send to the State Police laboratory. Ward based his testimony on the police file and the offense/incident report.

The police conducted a line-up on November 12, 1992, after repeated requests by Plaintiff. At the line-up, Barbara Rodehaver failed to identify Plaintiff as the perpetrator. The Fulton County Circuit Court dismissed the indictment and released Plaintiff on November 20, after five and a half months of incarceration. Plaintiff then brought this suit alleging false imprisonment and malicious prosecution in violation of his civil rights under Section 1983. Defendants contend that dismissal of this lawsuit is warranted because no genuine issue of material fact remains as to Plaintiff's claims or Defendant's entitlement to qualified immunity.

## II.

■ Defendants are entitled to summary judgment if they can establish that no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The Court must view the evidence in a light most favorable to the party opposing the motion, Plaintiff in this case, and give him the benefit of all reasonable inferences. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiff, however, cannot merely rest upon his pleadings, but must come forward with probative evidence to support his claim. *White v. Turfway Park Racing Association, Inc.*, 909 F.2d 941 (6th Cir.1990). Summary judgment is not appropriate if a reasonable jury could return a verdict for Plaintiff. *Anderson,* at 248, 106 S.Ct. at 2510.

■ To establish a right to relief under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right secured by the Constitution and laws of the United States, the deprivation was caused by a person acting under color of state law, and the deprivation occurred without due process of law. *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir.1994). In addition, a plaintiff alleging false imprisonment under § 1983 must establish that his imprisonment was without legal authority. *Rader v. Parks,* 258 S.W.2d 728, 729 (Ky.1953).[2] Here, Plaintiff alleges that Defendant Novak unlawfully imprisoned him without probable cause, in violation of his Fourth Amendment right against unreasonable seizures.

■ Probable cause for a warrantless arrest and subsequent detention exists when circumstances are "sufficient to warrant a reasonable and prudent man to believe that a suspect had committed or was committing an offense." *U.S. v. Steele,* 727 F.2d 580, 588 (6th Cir.1984).

■ It is evident from the pleadings and affidavits that the following material facts that are determinative of whether probable cause existed to imprison Plaintiff, are con-

---

2. In instances involving officers of the law, there is no distinction between false arrest and false imprisonment because the latter is always the result of the former. *Lexington–Fayette Urban Cty. v. Middleton,* 555 S.W.2d 613, 619 (Ky.App. 1977).

After the plaintiff establishes that his imprisonment was without legal authority, the burden shifts to the defendant to justify his conduct by showing that there was probable cause for the plaintiff's arrest on the grounds charged. A defendant can also succeed on a lesser showing, by establishing both that he had reasonable grounds and in good faith did believe those grounds for making the arrest and that he used no more force than necessary. *Id.* at 617.

tested: (1) the amount of time that elapsed between the dispatcher's call and Sgt. Novak's apprehension of Plaintiff; (2) whether Barbara Rodehaver positively identified Plaintiff as the perpetrator on the night the crime was committed; (3) whether Plaintiff provided the police with an alibi and alibi witnesses; and (4) whether Defendant Earle, as Chief of the Fulton Police Department, was involved in moving Plaintiff's case to the prosecution stage. Accordingly, summary judgment is not warranted here.

■ Plaintiff has raised sufficient facts for a reasonable jury to find that Novak lacked probable cause. Novak arrested Plaintiff despite Barbara Rodehaver's failure to positively identify Plaintiff as the perpetrator. Her statement that Plaintiff had short hair like the perpetrator does not create probable cause any more than does being a black man in the vicinity of a reported crime. Moreover, the highly tainted and prejudicial circumstances of the supposed initial "identification" raise serious questions about the reasonableness of relying upon it for any purpose, particularly to support an extended time of incarceration. Whether a reasonable person would believe that Plaintiff could have run from the Rodehaver house, dressed, laced his boots, and walked out onto Third Street in five minutes is also questionable. More importantly, a reasonable person may well question whether Plaintiff should have been kept in jail given the shaky grounds for arrest and the lack of physical evidence against him. A jury could reasonably conclude that the behavior of the police was much more than merely poor judgment, and was an unreasonable violation of Plaintiff's rights.

■ A § 1983 action for malicious prosecution is appropriate if the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension, and the tortfeasor is acting under state law. *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982). The prosecution itself must have the effect of

causing a violation of a constitutional guarantee. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir.1990); *see, e.g., Dunn,* (allowing plaintiff to proceed with his action when plaintiff was prosecuted for interfering with police officers in the performance of their duties by standing in his doorway to prevent police from conducting a warrantless search of his home). A plaintiff must show, in addition to the Section 1983 requirements, the following elements: (1) the institution or continuation of judicial proceedings such as a criminal prosecution; (2) by, or at the encouragement of, the defendant; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in the institution of the proceeding; (5) want or lack of probable cause for the proceeding; and (6) the suffering of damage as a result of the proceeding. *Raine v. Drasin,* 621 S.W.2d 895, 899 (Ky. 1981).[3]

The same material issues discussed in regard to unlawful detention also apply to the continuation of criminal proceedings against Plaintiff. A reasonable jury could find probable cause lacking and infer malice from its absence. *Sweeney v. Howard,* 447 S.W.2d 865 (Ky.1969). Plaintiff has shown the remaining elements. He was subject to a criminal prosecution instituted by the police. The proceeding ended in his favor when the charges were dropped. Lastly, he suffered over five months of incarceration and lost his job with the Army Corps of Engineers as a result of the prosecution. Accordingly, summary judgment on the malicious prosecution claim also is denied.

### III.

■ Defendants also argue that they are not subject to suit under § 1983 because they enjoy qualified immunity. The doctrine of qualified immunity provides that government officials, such as policemen, performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

**3.** Kentucky courts have recognized an important distinction between an action for false imprisonment and a claim of malicious prosecution. The former will lie only when the imprisonment lacks lawful authority. Where the arrest is made lawfully, the remedy is an action for malicious prosecution, in which malice and lack of probable cause are essential. *Rader,* at 729.

which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the official; rather, it turns on the "objective legal reasonableness" of his actions, assessed in light of legal rules that were "clearly established" at the time the actions were taken. *Id.* at 818–19, 102 S.Ct. at 2738.

■ When a defendant moves for summary judgment based on qualified immunity, a plaintiff must effectively pass two hurdles to withstand the motion. First, his allegations must state a claim of a violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law. *Russo v. Cincinnati,* 953 F.2d 1036, 1043 (6th Cir.1992).

■ In this case, the right to be free from unreasonable seizures under the Fourth Amendment is clearly established. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 212–214, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979). Therefore, the issue is whether Plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what Sgt. Novak and Chief Earle did was objectively unreasonable in light of his clearly established constitutional right. *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994). Plaintiff has met this burden. In addition to facts already stated, Defendants' failure to conduct a legitimate, untainted identification line–up until over five (5) months had passed could be viewed as affirmative proof of objectively unreasonable conduct. Unquestionably, Plaintiff has presented sufficient evidence to create genuine issues in regard to whether Defendants Novak and Earle imprisoned Plaintiff without probable cause.

Though immunity is a legal question, it is completely dependent upon which view of the facts the jury accepts. *Adams v. Metiva,* 31 F.3d at 387. If the jury believes Defendants' view of the facts, Defendants may be entitled to qualified immunity. But because of the many disputed material facts in this case, this result is not a foregone conclusion. The contested issues concerning whether there was cause to arrest and imprison Plaintiff must go to the jury. Consequently, summary judgment on the basis of qualified immunity is not appropriate for Defendants Novak and Earle.

## IV.

■ Officer Ward is entitled to qualified immunity at this juncture because his participation in the case was limited to testify before the grand jury based on the police file and the offense/incident report and packaging and labeling some of the evidence to send to the State Police laboratory. There is no probative evidence that Ward knew of information pointing to a lack of probable cause to arrest Dean, gave testimony to the grand jury which he knew to be false, or otherwise acted in bad faith. Ward merely followed the instructions of his superior, Chief Earle, to testify before the grand jury on Dean's case. Thus, Officer Ward did not violate Dean's clearly established constitutional rights and is immune from monetary liability under § 1983.

For the foregoing reasons, the motion of Defendants Novak and Earle for summary judgment is DENIED. Summary judgment on the ground of qualified immunity for Defendant Ward is GRANTED. The Court will enter an order in conformity with this Memorandum Opinion.

## ORDER

For the reasons explained in the attached Memorandum Opinion,

IT IS HEREBY ORDERED that the motion of Defendants', Guy Earle and Richard Novak, for summary judgment as to Plaintiff's claims of false imprisonment and malicious prosecution is OVERRULED.

IT IS FURTHER ORDERED that Defendant John Ward's motion for summary judgment is SUSTAINED and the claims against John Ward are DISMISSED with prejudice.