COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-234-CV

 

 

MICHAEL LEBLANC                                                              APPELLANT

 

                                                   V.

 

 

DETECTIVE C.D. RILEY                                                          
APPELLEE



 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








Appellant Michael LeBlanc appeals the trial court=s order
granting appellee Detective C.D. Riley=s first
amended motion for summary judgment.  In
three issues, appellant contends that the trial court generally failed to
follow Texas summary judgment principles, erred in its resolution of appellee=s
official immunity defense, and incorrectly denied appellant=s false
imprisonment claim.  We affirm.

In this summary judgment appeal, we will examine
the facts in the light most favorable to appellant; we will therefore recite
the facts favoring appellant=s claims
that are established through undisputed summary judgment evidence and also
through the evidence particularly offered by appellant to determine whether
appellee was entitled to summary judgment. 
See Tex. R. Civ. P. 166a(c), (i); Morgan v. Anthony, 27
S.W.3d 928, 929 (Tex. 2000); Reynolds v. Murphy, 188 S.W.3d 252, 262
(Tex. App.CFort Worth 2006, pet. denied), cert.
denied, 549 U.S. 1281 (2007).

                                        Background
Facts

Summary Judgment Evidence








At the time of the events relevant to this
appeal, appellant worked in the auto repair and dealership industries; he managed
Collision Masters in Haltom City. 
As part of his work, he bought and sold cars as an agent for Advantage
Automobile Sales (Advantage), and he became the equitable owner of such cars,
including a 2000 Toyota.  According to
appellant, he gave permission to James Hatcher to drive the Toyota while
appellant employed him; however, when Hatcher=s
employment ended, Hatcher failed to return the car, and at that point,
appellant noticed that his certificate of title to the car was missing.  Based on this discovery, appellant hired a
towing company to repossess the car from Hatcher.  After the towing company filed a letter of
authorization and a repossession order with the Watauga Police Department,[2]
it repossessed the car from a bowling alley. 
When Hatcher noticed that the car was missing, he reported it as stolen
to the Watauga Police Department. 
According to appellee, Hatcher produced a Texas certificate of title[3]
indicating that he owned the car; the certificate of title did not list any
lienholders.

Officer Sean Romer investigated Hatcher=s
allegations and submitted a report. 
During his investigation, Officer Romer contacted an employee of the
towing company, and the employee confirmed that appellant had hired him to
repossess the car, but that appellant had not submitted any paperwork proving
that he owned the car.  Officer Romer
concluded that the car had been unlawfully taken by appellant, and he
classified the car as stolen in an electronic database.








After Officer Romer finished his initial
investigation, the police department assigned appellant=s case
to Detective Riley, appellee.  After
appellee reviewed Officer Romer=s
report, Hatcher contacted appellee, claiming that Hatcher owned the car because
he had received it in lieu of a raise. 
He also told appellee that he had found the car locked inside the towing
company=s
facility.  Appellee told the towing
company that it needed to give Hatcher the car.








Around that same time, appellant had a
conversation with appellee wherein appellant claimed that Hatcher had stolen
the car from him and that Hatcher had fraudulently transferred its legal
ownership,[4]
although appellant admitted that he had not yet filed a theft report about the
car.  Appellee told appellant that the
car would be returned to Hatcher because Hatcher had a valid certificate of
title showing that he was its owner and because appellant had a criminal
record.[5]  Appellant offered to sign a sworn statement
supporting his allegations, and he informed appellee that Advantage was a
licensed and bonded auto dealership.[6]  Appellant said that he would sue appellee and
have him fired if he gave Hatcher the car; appellee allegedly responded, AI=m going
to get you,@ before he hung up the phone.

To ensure that the towing company gave Hatcher
the car, appellee went to the towing facility and met with Hatcher.  While appellee waited at the towing facility,
appellant went to the Haltom City Police Department to report the car as
stolen.[7]  After appellee discussed the release of the
car with an employee of the towing company (who, based on appellant=s instructions
and an alleged call to the Fort Worth Police Department, initially refused to
give it to Hatcher), Hatcher regained the car. 
Appellant has never again seen the car.








Appellee contacted the Tarrant County District
Attorney=s Office
to discuss the potential charges stemming from appellant=s
alleged theft of the car through the towing company he had hired.  Appellee spoke with assistant district
attorney Alfredo Valverde, who told him that since Hatcher provided evidence
that he legally owned the car, the car could be considered stolen.[8]  After speaking with Valverde, appellee
prepared an arrest warrant with a supporting affidavit,[9]
and then he presented these documents to a judge and gained the judge=s
signature on the warrant.

In November 2005, a police officer stopped
appellant for speeding, arrested him based on the theft warrant, and took him
to the Arlington Police Department.  A
grand jury declined to indict appellant for the theft charge.








Procedural History

In November 2007, appellant filed his second
amended petition[10]
against appellee, asking for compensatory and exemplary damages related to his
arrest, the loss of the car, and his mental anguish.  Appellee filed an answer that asserted a
general denial as well as the affirmative defense of official immunity.








The next month, appellee filed a hybrid
(traditional and no-evidence) motion for summary judgment.[11]  In February 2008, appellant filed his
response to appellee=s motion, attaching his own
affidavit, deposition testimony from Valverde and appellee, and other
affidavits and documents.  In his
affidavit, appellant asserted (among other contentions) that appellee did not
give him sufficient time to produce evidence that he owned the car.  The parties filed objections to each other=s
summary judgment evidence; however, the trial court never expressly ruled on
these objections, and no issue based on the admissibility of the evidence as
asserted in the trial court has been raised in this appeal.  In March 2008, the trial court granted
appellee=s motion
(without specifying the particular ground it used to do so)[12]
and rendered judgment for appellee on all of appellant=s
claims.  After filing a motion for new
trial, appellant perfected this appeal.

      Appellant=s General Challenge to
the Trial Court=s Summary Judgment

                                        Must
Be Overruled

 

In his first issue, appellant states, AThe
Trial Court erred by not following the Texas case law summary judgment rules by
denying Appellant=s Motion for Summary Judgment,[13]
and further erred by granting Appellee=s First
Amended Motion for Summary Judgment.@  He then sets out standards relating to
summary judgments, but he fails to explain how the trial court misapplied these
standards.  Instead, he merely concludes
that the trial court Afailed to consider the proof and
evidence presented by Appellant and failed to consider the many questions of
fact presented in Appellant=s
response to Appellee=s s/j [sic] motion.@








A general issue broadly challenging a summary
judgment is permissible.  See Malooly
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970) (stating that such a
general issue Aallow[s] argument as to
all the possible grounds upon which summary judgment should have been denied@)
(emphasis added).  However, to preserve
error on a particular cause of action on which the trial court granted summary
judgment, an appellant must still present argument and legal authority related
to that particular claim.  See
Henriquez v. Cemex Mgmt., Inc., 177 S.W.3d 241, 255 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied); Cruikshank v. Consumer Direct Mortg., Inc.,
138 S.W.3d 497, 502 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied) (concluding that Aa
general Malooly point of error . . . is only sufficient to preserve a
complaint if the specific ground challenged on appeal is supported by argument@); Pena
v. State Farm Lloyds, 980 S.W.2d 949, 959 (Tex. App.CCorpus
Christi 1998, no pet.) (holding that Malooly does not relieve Aan
appellant of the burden to challenge the grounds for the summary judgment and
present at least some argument for his case on appeal@);
Jatoi v. Decker, Jones, McMackin, Hall & Bates, 955 S.W.2d 430, 433B34 (Tex.
App.CFort
Worth 1997, pet. denied) (deciding that a general Malooly point was
insufficient because the appellant=s
argument did not highlight Aany
specific basis on which summary judgment was improper@).








Because appellant fails to provide an adequate
explanation of the general contentions he has raised in his first issue by
connecting them to his specific claims, we will overrule that issue.[14]  See Tex. R. App. P. 38.1(i)
(requiring a Aclear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record@); Leachman
v. Dretke, 261 S.W.3d 297, 305 n.2 (Tex. App.CFort
Worth 2008, no pet.) (noting that an issue may be waived due to inadequate
briefing); McClure v. Denham, 162 S.W.3d 346, 349 (Tex. App.CFort
Worth 2005, no pet.); Jatoi, 955 S.W.2d at 433B34.








Also, appellee specifically included no-evidence
challenges related to appellant=s
conversion, malicious prosecution, and abuse of process claims in his summary
judgment motion, and the trial court granted summary judgment on each of these
claims.  Because appellant, though
raising a general Malooly issue, has presented no argument related to
any of these causes of action on appeal, we will affirm the trial court=s grant
of summary judgment on such claims, and we will proceed to determine whether
the trial court correctly granted summary judgment to appellee on appellant=s sole
remaining claimCfalse imprisonmentCwhich he
properly raised in his third issue.[15]  See Henriquez, 177 S.W.3d at 255;
see also City of The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699,
739 (Tex. App.CFort Worth 2008, pet. filed)
(affirming the trial court=s
summary judgment on a promissory estoppel claim because the appellant set forth
Azero
argument or evidence in its brief challenging the trial court=s grant@).

                                Summary
Judgment Standards

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i); Sw. Elec. Power Co. v. Grant,
73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no‑evidence summary judgment for evidence that would enable reasonable
and fair‑minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005)).

                                       False
Imprisonment

In his first amended motion for summary judgment,
appellee asserted that there was no evidence of certain elements of the false
imprisonment claim that appellant asserted in his second amended petition.  Specifically, appellee contended that there
was no evidence that he detained appellant, that he made a misrepresentation of
fact or law leading to appellant=s
detention, or that appellant=s
detention was without legal authority or justification.  He particularly argued that because appellant=s arrest
was made under a procedurally correct arrest warrant, his false imprisonment
claim was barred.








To establish false imprisonment, appellant must
show that there has been a (1) willful detention, (2) without consent, and (3)
without authority of law.  Dangerfield
v. Ormsby, 264 S.W.3d 904, 909 (Tex. App.CFort
Worth 2008, no pet.); see Wal‑Mart Stores, Inc. v. Rodriguez, 92
S.W.3d 502, 506 (Tex. 2002).  When an
arrest is made under a procedurally valid arrest warrant on the correct person
named in the warrant, there can generally be no claim for false imprisonment.  Martinez v. English, 267 S.W.3d 521,
529 (Tex. App.CAustin 2008, pet. denied)
(reversing a jury=s award on a false imprisonment
claim because the plaintiff had challenged Athe
grounds on which the warrant was issued, not the warrant=s facial
validity@);
Avalos v. Mejia, 788 S.W.2d 645, 646 (Tex. App.CCorpus
Christi 1990, no writ); see James v. Brown, 637 S.W.2d 914, 918 (Tex.
1982) (explaining that if Aan
arrest or detention is executed under process which is legally sufficient in
form and duly issued by a court of competent jurisdiction, an action for false
imprisonment will not lie@).  To determine whether an arrest warrant is
valid for false imprisonment purposes, a court must look Aonly to
the form of the process by which the arrest warrant was made; [the court must]
not determine, for example, whether probable cause existed to issue the
warrant.  If the warrant is valid on its
face, [the court=s] inquiry ends there.@  Martinez, 267 S.W.3d at 529 (citation
omitted); see also Wal‑Mart Stores, Inc. v. Odem, 929 S.W.2d 513,
519 (Tex. App.CSan Antonio 1996, writ denied)
(stating that in a false imprisonment case, the legal authority element is met Aeither by the
procurement of an arrest warrant or by the showing of existence of
probable cause@) (emphasis added).








In Emerson v. Borland, Borland sued
several officials within the state fire marshal=s office
for false imprisonment based on his arrest that indirectly arose from their
determination that he was illegally selling portable fire extinguishers.  927 S.W.2d 709, 711B13 (Tex.
App.CAustin
1996, writ denied), cert. denied, 522 U.S. 866 (1997).  Borland=s false
imprisonment claim was based on his assertion that his actions were legal and
that his arrest (pursuant to warrants issued by local officials who relied on
the defendants= determination) was without
probable cause.  Id. at 715B16.  On appeal, the Austin Court of Appeals
rejected Borland=s contention, holding that
because the warrants were issued by competent magistrates and because they were
in proper form, Borland=s false imprisonment claim was
precluded as a matter of law.  Id.
at 720B21.

Similarly, in Cantu v. Botello, Cantu sued
a McAllen police officer for false imprisonment after the officer sought and
obtained an arrest warrant following his investigation that incorrectly
concluded that Cantu unlawfully delivered marijuana to a UPS office.  910 S.W.2d 65, 65B66 (Tex.
App.CCorpus
Christi 1995, no writ).  The Corpus
Christi Court of Appeals rejected Cantu=s false
imprisonment claim, concluding that a Avalid
warrant is an absolute bar to a claim of false arrest.@  Id. at 66.








As in Borland and Cantu, appellant
in this case does not challenge the process of his arrest through the technical
aspects of the warrant or its facial validity; instead, he complains about
appellee=s
underlying factual investigation and the probable cause determination leading
to the issuance of the warrant.  After
examining appellant=s arrest warrant, we conclude
that it complies with the procedural requirements set forth by the code of
criminal procedure.  See Tex.
Code Crim. Proc. Ann. art. 15.02 (Vernon 2005). 
Under these circumstances, we hold that appellant=s false
imprisonment claim is barred.[16]  See Borland, 927 S.W.2d at 720B21; Cantu,
910 S.W.2d at 66.  Therefore, we will
also affirm the trial court=s grant
of summary judgment on this claim.[17]








                                             Conclusion

Having overruled appellant=s
dispositive issues, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON and MCCOY, JJ.; and WILLIAM
BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  April 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]The letter of authorization
is a document signed by appellant permitting the towing company to gain
possession of the car.  The repossession
order is a similar unsigned document; it lists Advantage as the car=s lienholder.





[3]In appellant=s affidavit, he asserts
that paperwork associated with the transfer of title to Hatcher related that
Hatcher paid $2,000 for the car, and he contended that neither he nor Advantage
ever received such payment.





[4]Appellant submitted an
affidavit as summary judgment evidence stating that Hatcher fraudulently
transferred ownership of the car from Advantage to himself through
forgery.  Appellant specified that he was
the only person with the authority to transfer ownership of the car, that he
was the only person with the authority to file an application for a new title
with the state, and that he never did either of these acts.





[5]During his deposition,
appellee stated that he remembered telling appellant that he had seen appellant=s criminal history, but
he explained that he made this statement after appellant asserted that Hatcher
deserved further investigation because he also had such a history.





[6]Appellant later submitted
such a sworn statement, and appellee reviewed this statement on the same day
that he obtained appellant=s arrest warrant. 
Appellee deposed that he did not investigate the allegations contained
in that statement and that the statement did not make an impact on his decision
to obtain the warrant because he believed he had probable cause based on other
facts.





[7]Appellant attached a
letter to his summary judgment response wherein he affirmed to the Haltom City
Police Department on behalf of Advantage that it did not sell the car to
Hatcher and that title to the car had therefore been fraudulently
transferred.  According to appellant, the
Haltom City Police Department refused to act on his letter because of the
charges the Watauga Police Department had brought against him.





[8]During a deposition,
Valverde confirmed appellee=s call and explained why he advised appellee that
issuing an arrest warrant and prosecuting appellant was appropriate.  Specifically, Valverde said that Hatcher
seemed credible because (1) if Hatcher had stolen the car as appellant alleged,
Hatcher likely would not have called the police, and (2) appellant waited until
after repossessing the car to report it as stolen.  During his deposition, appellee could not
remember whether he discussed the sworn statement appellant had submitted with
Valverde, because he did not know whether he received the statement before or
after the conversation with Valverde occurred. 
Appellant=s former attorney=s affidavit, attached to
appellant=s summary judgment
response, indicated that in August 2007, Valverde told him that he did not
remember any specific details of his conversation with appellee.  In appellee=s own deposition, he
conceded that he spoke with Valverde in lieu of researching law related to car
repossession in Texas, that he knew Avery little@ about title transfers of cars, and that he had
no special training regarding car thefts.





[9]The affidavit
substantially incorporated the same facts contained in the offense reports
generated by Officer Romer and appellee.





[10]Appellant filed his
original petition in March 2007, and he filed his first amended petition in
October 2007; neither of these petitions are in the record on appeal.





[11]Appellee originally filed
his motion for summary judgment in October 2007, and appellant filed a response
to this motion in November 2007. 
However, after appellant amended his petition, appellee submitted an
amended summary judgment motion, and appellant filed a new response.





[12]Under such a general
grant of summary judgment, we must affirm the trial court=s decision if any of the
theories that appellee advanced at trial are meritorious.  See Morris v. JTM Materials, Inc., 78
S.W.3d 28, 36 (Tex. App.CFort Worth 2002, no
pet.).





[13]The record does not
indicate that appellant ever filed a motion for summary judgment.





[14]Even if the trial court
had relied on improper summary judgment standards or had misapplied the correct
standards, we note that our review of the trial court=s decision proceeds on a
de novo basis.  See Gray v. Nash,
259 S.W.3d 286, 289 (Tex. App.CFort Worth 2008, pet. denied).





[15]In his third issue,
appellant also contends that appellee violated his federal and state
constitutional rights.  However,
appellant did not raise any constitutional claims in his second amended
petition or during the trial court=s summary judgment proceedings; thus, we will not
consider these claims on appeal.   See Foster v. Howeth, 112 S.W.3d 773, 775
(Tex. App.CBeaumont 2003, no pet.).





[16]We do not conclude that
appellant=s arrest pursuant to a
procedurally valid warrant would bar all claims he may have asserted against
appellee related to appellee=s allegedly deficient investigation; we only
conclude that such an arrest bars the sole claim that appellant preserved in
this appealCfalse imprisonment.





[17]Because we have affirmed
the trial court=s grant of summary
judgment on appellant=s sole remaining claim on
this basis, we need not address appellant=s second issueCwhether the trial court correctly granted appellee=s traditional motion for
summary judgment on his official immunity defense.  See Tex. R. App. P. 47.1.